IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| TRACY A. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | 3:17-cv-50331 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| WINNEBAGO CO. JAIL, DR. LEE, | ) | |
| DR. MILO, and SWEDISH AMERICAN | ) | |
| HOSPITAL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tracy Thomas, an inmate in the Illinois Department of Corrections, has sued Defendants Winnebago County Jail, Dr. Kenton Lee, Dr. Steven Milos, and Swedish American Hospital, alleging unconstitutionally inadequate care for knee pain he suffered while in the Winnebago County Jail. Dr. Lee, the only remaining Defendant[1], moves for summary judgment. For the reasons stated herein, Dr. Lee's motion [53] is granted. Civil case terminated.

## Factual Background[2]

Thomas was detained in the Winnebago County Jail from April 15, 2016, to June 16, 2017, when he was transferred to the Illinois Department of Corrections. Def.'s LR 56.1(a) Stmt. Facts ("Def.'s SOF") ¶ 1, ECF No. 54. While at the Winnebago

---

[1]  The Winnebago County Jail, Dr. Milos, and Swedish American Hospital have been dismissed as Defendants. *See* 11/17/17 Order, ECF No. 4; 7/31/18 Order, ECF No. 46.

[2]  The following facts are undisputed except where otherwise noted.

County Jail, he sought treatment for knee pain from Dr. Lee, the jail's Medical Director. *Id.* ¶¶ 3–4, 8. Dr. Lee is a licensed family practitioner who does not specialize in surgery. *Id.* ¶ 3.

Thomas first saw Dr. Lee on April 29, 2016. *Id.* ¶ 4. At that visit, Thomas informed Dr. Lee that, before his detention, he had been scheduled for a knee replacement for his left knee. *Id.* ¶ 8. He described his pain as being constant and explained that he previously had received an MRI. *Id.*; *see* Def.'s Ex. B, Lee Decl., Ex. 1, Jail Medical Records at 64, ECF No. 55-3.[3] Dr. Lee noted that he would obtain the records from Thomas's October 2015 MRI, and prescribed Ibuprofen and Tylenol. Jail Medical Records at 65.

The MRI records showed a "complex tear" in Thomas's medial and lateral meniscuses, as well as a "full-thickness tear" in his ACL. *Id.* at 66–67. The records further indicated that, following the MRI, Thomas was referred to an orthopedic doctor. Def.'s SOF ¶ 10. But Thomas did not seek out an orthopedic doctor at that time due to insurance problems. *Id.*

Thomas saw Dr. Lee again on May 27, 2016. *Id.* ¶ 4. At that visit, Dr. Lee noted Thomas's complaint that his pain medications were "not doing anything." Jail Medical Records at 76. Dr. Lee referred Thomas to an orthopedic surgeon, Dr. Milos, for a consultation. Def.'s SOF ¶ 12; Jail Medical Records at 77. Dr. Lee also switched Thomas's medication to Ultram. Jail Medical Records at 77.

---

[3] The Court refers to the Bates page numbers at the bottom right-hand corner of the Jail Medical Records, eliminating "HRVA" and leading zeroes.

2

Thomas then saw Dr. Lee on July 1, 2016. Def.'s SOF ¶ 4. Dr. Lee noted that Thomas had a brace, which he had kept since his arrival in the jail. Jail Medical Records at 81. Dr. Lee prescribed Thomas a walker "until seen by orthop [*sic*] who will provide immobilizer." *Id.* at 82; *see* Def.'s SOF ¶ 30. Dr. Lee also prescribed Thomas an "ACE wrap." Def.'s SOF ¶ 35; Jail Medical Records at 82.

Dr. Milos evaluated Thomas on July 11, 2016. Def.'s SOF ¶ 13. Thomas told Dr. Milos that he had injured his left knee a year earlier while playing basketball. *Id.* Dr. Milos reviewed the October 2015 MRI and conducted a physical examination. *Id.* ¶¶ 14–15. Dr. Milos concluded that another MRI was not necessary, because Thomas had not reported any new injuries since October 2015. *Id.* ¶ 16. Dr. Milos diagnosed Thomas with a left ACL tear, left medial meniscus tear, and tear of the lateral meniscus of the left knee. *Id.* ¶ 17. Dr. Milos spoke with Thomas about conservative treatment options such as rest, activity modifications, a knee brace, and anti-inflammatory medication, but Thomas wanted to have surgery. *Id.* ¶¶ 18–19. Accordingly, Dr. Milos's handwritten report to the jail stated: "Orders/recommendations: Recommend surgery for ACL + meniscus tears *Needs 3 months of post-op PT. Rx for brace given." *Id.* ¶ 20.

Jail medical staff received calls from Dr. Milos's office on July 14 and July 18, 2016, informing them that Dr. Milos recommended that Thomas have ACL surgery. Def.'s LR 56.1(b)(3)(B) Resp. Pl.'s SOAF ¶ 10, ECF No. 96; *see* Jail Medical Records

3

at 85; Def.'s Ex. C, Milos Decl., Ex. 1, Consultation Records at 6.[4] Dr. Lee, in response, wrote that he would wait to receive records from the orthopedic visit before scheduling surgery. Jail Medical Records at 85.

Dr. Milos's typed consult report, faxed to the jail on August 3, 2016, stated:

> [Thomas] has a left knee ACL and meniscus tears with instability and mechanical symptoms. We discussed conservative options but he wishes to proceed with surgery. . . . We will proceed with left knee ACL reconstruction (patellar allograft) with partial medial and lateral menisectomies.

Def.'s SOF ¶ 21. After receiving Dr. Milos's report, Dr. Lee asked jail medical staff to check with Dr. Milos to see if the surgery was elective, noting that the "jail usually defers elective procedure[s]." *Id.* ¶ 22; Jail Medical Records at 97.

Several days later, on August 12, 2016, Thomas received a knee brace. Pl.'s LR 56.1(b)(3)(C) Stmt. Add'l Facts ("Pl.'s SOAF") ¶ 14, ECF No. 95. Dr. Lee then discontinued Thomas's prescription for a walker. *Id.* ¶ 15; *see* Jail Medical Records at 97–98. Once Thomas received the knee brace, however, a correctional officer confiscated the metal supports from the brace. *See* Pl.'s SOAF ¶ 16; Pl.'s LR 56.1(b)(3)(B) Resp. Def.'s SOF ¶ 40, ECF No. 93. Dr. Lee noted this removal in a note on August 16, 2016. Pl.'s SOAF ¶ 16; *see* Jail Medical Records at 97. He wrote: "pt brace has metal—theref[ore] security risk, ask pt if want brace but would need to be in seg vs. walker + able to be in GP." Jail Medical Records at 97.

---

[4] The Court refers to the Bates page number in the bottom middle of the page of the Consultation Records, eliminating "LUNDHOLM" and leading zeroes.

4

On August 23, 2016, jail medical staff received a call from a nurse at Dr. Milos's office. Pl.'s SOAF ¶ 17. The nurse explained that Thomas "will need surgery at some point," but stated that "ACL surgery is consider[ed] elective surgery" and Thomas had "request[ed] that surgery be done now instead of other options." *Id.*; Jail Medical Records at 99. Furthermore, the nurse explained, Thomas would need physical therapy starting two days after surgery. Jail Medical Records at 99.

Thomas saw Dr. Lee again on September 2, 2016. Def.'s SOF ¶ 4. At that visit, Dr. Lee again noted that the metal supports had been taken out of Thomas's brace, and that Thomas had been given the option of getting them back by going to "seg." Jail Medical Records at 101. Dr. Lee noted that he would check with the orthopedic surgeon to confirm that surgery was elective. *Id.* at 102. He also ordered pain medication to be restarted and to "cont walker + brace." *Id.*

On September 9, 2016, Dr. Lee noted that he had spoken with Dr. Milos, who "confirmed pt surg is elective" and that three months of physical therapy would be required after surgery. Def.'s SOF ¶ 22; Jail Medical Records at 99. In that conversation, Dr. Milos "stated that if [Thomas] didn't get the 3 mo[nth] postop PT, his knee outcome could be worse." Jail Medical Records at 99. Dr. Milos "recommended postpone surg until [Thomas] out of jail." *Id.*

Dr. Lee saw Thomas again on November 8, 2016. Def.'s SOF ¶ 4. At that visit, he noted Thomas's statement that his current pain medication, Tylenol #3 and Ibuprofen, "works well." *Id.* ¶ 28; Jail Medical Records at 108. Dr. Lee told Thomas to continue using his walker and encouraged him to practice "leg strengthening

5

exercises." Jail Medical Records at 109. Dr. Lee noted: "if goes to prison, reconsider surg." Def.'s LR 56.1(b)(3)(B) Resp. Pl.'s SOF ¶ 18; Jail Medical Records at 108.

Dr. Lee next saw Thomas on March 6, 2017. Def.'s SOF ¶ 4. At that time, Dr. Lee recommended an orthopedic referral for surgery and postoperative physical therapy. Def.'s LR 56.1(b)(3)(B) Resp. Pl.'s SOF ¶ 19. But on March 23, he updated his note to indicate that he had forgotten that Thomas had already seen Dr. Milos, who stated that surgery was elective. *Id.*; *see* Jail Medical Records at 120. That same day, jail medical staff attempted to contact Dr. Milos's office about the referral order. Pl.'s SOAF ¶ 20. On March 23, Dr. Milos's office staff spoke with jail medical staff, who indicated that "they prefer no surgery while in jail unless absolutely necessary." *Id.* ¶ 22; Consultation Records at 13. Dr. Milos responded on March 26, stating: "Surgery is not absolutely necessary. He can wait until out of jail for surgery. This is an old injury and thus no urgency." Pl.'s SOAF ¶ 23; Consultation Records at 13.

Dr. Lee spoke with Dr. Milos again on April 10, 2017. Pl.'s SOAF ¶ 24. He cancelled the orthopedic appointment and noted that Dr. Milos "thinks surg elective still + w/o PT, could have worse outcome." Jail Medical Records at 124. Dr. Lee noted that the jail could offer Thomas his brace with metal supports "if in different pod . . . might be worth a try to see if it helps." *Id.*

The metal stabilizing supports for Thomas's brace were returned to him on April 19, 2017. Pl.'s SOAF ¶ 26. At that time, he was moved to a medical wing of the jail. *Id.*

6

Soon thereafter, on April 26, Dr. Lee ordered an X-ray of Thomas's knee, which showed "mild degenerative changes." Def.'s LR 56.1(b)(3)(B) Resp. Pl.'s SOAF ¶ 27. Dr. Lee saw Thomas again on April 28, 2017. Def.'s SOF ¶ 4. At that visit, Dr. Lee noted that Thomas had a metal brace, but was still experiencing pain. Jail Medical Records at 132. He told Thomas that surgery was considered elective, *id.* at 133, prescribed Thomas a wheelchair, and ordered him not to put weight on his knee for three weeks. *Id.*; *see* Def.'s SOF ¶¶ 30–31.

Dr. Lee discontinued the wheelchair on May 24, 2017, after the three-week restriction had ended and after a nurse wrote that she saw Thomas standing up. Pl.'s LR 56.1(b)(3)(B) Resp. Def.'s SOF ¶¶ 30–31. Dr. Lee had last seen Thomas on May 8, 2017—their last appointment before Thomas left the jail in June. Def.'s SOF ¶ 4.

Dr. Milos and Dr. Lee both submitted declarations indicating that they believe knee surgery to be elective for Thomas, meaning that it could be beneficial but does not need to be done at any particular time. *Id.* ¶¶ 23, 38.[5] Furthermore, both doctors agree that surgery could be appropriately deferred until Thomas was released from jail or transferred to the Illinois Department of Corrections. *Id.* ¶ 39. Dr. Lee and Dr. Milos also agree that a knee brace was an appropriate and reasonable conservative treatment, and that different treatment was not medically necessary. *Id.* ¶¶ 40, 43.

---

[5] Thomas objects to the doctors' opinions concerning his need for treatment, arguing that they call for legal conclusions and are "unfounded and self-serving." Pl.'s LR 56.1(b)(3)(B) Resp. Def.'s SOF ¶¶ 38–39, 42. This is incorrect. Dr. Milos and Dr. Lee both personally examined Thomas and drew conclusions well within the scope of their expertise as physicians. This is a sufficient foundation for their testimony.

7

For his part, Thomas agrees that Dr. Lee's failure to schedule him for surgery is the basis of his complaint. Pl.'s LR 56.1(b)(3)(B) Resp. Def.'s SOF ¶ 36. He testified, however, that he understood knee surgery to be elective.[6] *Id.* ¶ 25.

**Legal Standard**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a court must "view the facts in the light most favorable to the nonmoving party." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2017 (2014).

A district court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). Moreover, the Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). "The judge must ask whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The existence of a mere scintilla of evidence supporting a plaintiff's position is insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

---

[6] Thomas objects to Dr. Lee's citation of his testimony that he understood surgery to be elective. *See* Pl.'s LR 56.1(b)(3)(B) Resp. Def.'s SOF ¶ 25. He contends that this testimony is hearsay, calls for speculation, and rests on matters outside Thomas's knowledge as a layperson. *Id.* These objections are overruled. Prior statements made by Thomas are statements of a party opponent and not hearsay. Fed. R. Evid. 801(d)(2).

8

## Analysis

Dr. Lee moves for summary judgment, contending that he provided appropriate care for Thomas's knee injury, including by relying on Dr. Milos's advice regarding surgery and providing Thomas with pain medication, a brace, a walker, and a wheelchair. Thomas, in response, argues that Dr. Lee (1) "stalled the surgery in an attempt to appease Winnebago County Jail Administration"; (2) failed to assist Thomas when the metal supports were taken out of his knee brace; and (3) provided inadequate additional assistance, such as by discontinuing his wheelchair and waiting a year to move him to the medical wing. Pl.'s Resp. Opp. Mot. Summ. J. at 1, ECF No. 94.

The Fourteenth Amendment applies to claims concerning the treatment of pretrial detainees. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). In *Miranda*, the Seventh Circuit held that "medical-care claims brought by pretrial detainees under the Fourteenth [A]mendment are subject only to [an] objective unreasonableness inquiry," as opposed to the more stringent standard applied to prisoners under the Eighth Amendment. *Id.* Under this objective standard, Thomas must show that (1) Dr. Lee acted purposefully, knowingly, or perhaps even recklessly, and (2) Dr. Lee's conduct in response to Thomas's serious medical needs was objectively unreasonable. *McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018).

In gauging the appropriateness of medical care in prisons and jails, courts are guided by certain well-settled principles. First, indifference to prolonged, unnecessary pain can be the basis for a constitutional violation; "[e]ven a few days'

9

delay in addressing a severely painful but readily treatable condition suffices" to implicate the Constitution. *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Still, a medical professional is entitled to deference unless his decision to pursue a particular course of treatment "represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish" unconstitutional medical care. *Id.*

As an initial matter, Dr. Lee contends that Thomas cannot take issue with any of his care other than the denial of surgery, given that his complaint refers only to surgery and he testified that the lack of surgery was his primary grievance. It is true that Thomas did not raise any issues with his care other than the denial of surgery until summary judgment. Still, even considering the other issues he now raises, the Court concludes that a reasonable jury could not find in Thomas's favor on this record.

First, it is clear that Dr. Lee reasonably relied on the advice of Dr. Milos, a specialist, concerning the need for surgery. The record shows that, when Dr. Milos met with Thomas, he discussed conservative treatment options but recommended surgery because it was what Thomas wanted. Dr. Lee did not immediately schedule surgery, but waited to obtain Dr. Milos's report and then to talk with Dr. Milos about the medical necessity of the surgery. At that point, Dr. Milos informed Dr. Lee—in the first of several such conversations—that the surgery was elective, and that it

10

might be better to postpone surgery until Thomas was discharged from the jail due to the need for three months of physical therapy. Dr. Lee reasonably relied on that assessment in deciding not to schedule the surgery.

Furthermore, the undisputed evidence shows that Thomas's injury was old when he entered the jail, and that he had himself had delayed undergoing surgery before he was detained. Thomas thus cannot show that Dr. Lee's decision to forego surgery was outside the normal realm of medical care or was otherwise reckless. *See, e.g.*, *Johnson v. Doughty*, 433 F.3d 1001, 1015 (7th Cir. 2006) (upholding doctors' decisions to treat a prisoner's hernia without surgery); *Myers v. McAuley*, No. 02 C 1590, 2003 WL 22232830, at *13 (N.D. Ill. Sept. 16, 2003) (explaining that a detainee could not recover damages for a delay in receiving elective, non-critical surgery).

Nevertheless, Thomas argues that Dr. Lee had a motive to "stall"[7] the surgery in accordance with the jail administration's wishes, despite Dr. Milos's original recommendation. As an initial matter, Thomas does not point to any evidence supporting that notion other than his own speculation. *See* Pl.'s SOAF ¶ 12; Pl.'s Resp. Opp. Mot. Summ. J. at 3. Moreover, Dr. Lee's motives are irrelevant under the objective reasonableness standard. A detainee does not have a right to a particular type of treatment; all that matters is whether the physician's decision was a

---

[7] Thomas points to a handwritten note of Dr. Lee, appearing to read it as follows: "[check] w/ Dr Milos + <u>stall</u> nurse re: surgery." *See* Pl.'s SOAF ¶ 12; Jail Medical Records at 97. The note more plausibly reads: "[check] w/ Dr Milos + <u>staff</u> nurse re: surgery." *See* Jail Medical Records at 97. In any event, the wording does not matter. As described in this paragraph, after writing the note, Dr. Lee reasonably relied on Dr. Milos's assessment that surgery was not necessary.

11

reasonable one, or was reckless. *See McCann*, 909 F.3d at 886; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[An inmate] is not entitled to demand specific care."). Here, the evidence shows that Dr. Milos informed Dr. Lee that the surgery was elective and that the need for physical therapy following surgery might make it more appropriate to wait. Dr. Lee reasonably relied on Dr. Milos's advice to that effect, regardless of any motive Dr. Lee may have had prior to the conversation.

As for the knee brace, Thomas has adduced no evidence that Dr. Lee was responsible for removing the metal supports; in fact, he testified that a correctional officer confiscated the metal. *See* Pl.'s LR 56.1(b)(3)(B) Resp. Def.'s SOF ¶ 40; Def.'s Ex. A, Thomas Dep. at 44:5–22, ECF No. 55-1. And Thomas points to no evidence that Dr. Lee had the power to return the metal to him. Thus, the mere removal of the metal from the knee brace cannot be imputed to Dr. Lee.

Moreover, even accounting for the removal of the metal from the brace, a jury could not reasonably find inadequate Dr. Lee's other actions to address Thomas's knee pain. During the period after the metal was removed from the brace, Dr. Lee prescribed pain medication to Thomas and even changed the medication several times to find a combination that worked for him. Dr. Lee also provided Thomas with a walker, an ACE wrap, and, for a short time, a wheelchair. Dr. Lee monitored Thomas's treatment and saw him regularly, recording his pain and offering other suggestions, such as leg exercises. Thomas has failed to present any evidence from which a reasonable jury could conclude that Dr. Lee failed to exercise his medical

judgment in issuing any of these prescriptions or implementing other treatment measures. *See Pyles*, 771 F.3d at 409.

Thomas argues, however, that Dr. Lee improperly discontinued his walker and wheelchair. True, Dr. Lee discontinued the walker when he learned Thomas had been fitted with a knee brace. But later, when he learned that the metal supports had been taken out of the brace, Dr. Lee once again noted that Thomas should use a walker. *See* Jail Medical Records at 102. Thomas has pointed to no evidence that the walker was not provided or was ever again discontinued.

As for the wheelchair, Dr. Lee prescribed it in connection with a three-week weight-bearing restriction. After the three-week period ended and a nurse saw Thomas standing up, Dr. Lee discontinued the wheelchair. Thomas cannot show that this decision was reckless, particularly given that, by that point, he had a functional knee brace. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) ("There is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field.") (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)).

Finally, Thomas contends that Dr. Lee violated his rights by failing to move him to a medical wing until April 2017. But this assertion is devoid of factual or legal support. In particular, Thomas does not explain whether he ever asked for this accommodation before April 2017, or whether it was necessary for him to move around the jail or alleviate his pain. Given the other treatment Dr. Lee provided—pain medication, various knee supports, a walker, and consultation with a

specialist—a reasonable jury could not conclude that failing to assign him to the medical wing earlier was reckless. *See id.*

In sum, the record shows that Dr. Lee reasonably relied on the advice of Dr. Milos with respect to surgery and exercised his professional judgment at every other turn to ensure that Thomas had multiple treatments available for his knee pain. The Constitution does not require doctors to ensure detainees a pain-free existence; instead, they must provide only reasonable and professional care. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); *see also Norwood v. Ghosh*, 723 F. App'x 357, 365–66 (7th Cir. 2018) ("[T]reating pain allows considerable room for professional judgment. Medical professionals cannot guarantee pain-free lives for their patients."). On this record, a reasonable jury could not conclude that Dr. Lee failed to meet that standard.

## Conclusion

For the reasons provided, Dr. Lee's motion for summary judgment is granted. Civil case terminated.

**IT IS SO ORDERED.**     ENTERED: 8/12/19

_____
**John Z. Lee**
**United States District Judge**

14